**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROBERT MIRACLE,

      Petitioner,                       Civil No. 2:15-CV-10562
                                        HONORABLE NANCY G. EDMUNDS
v.                                UNITED STATES DISTRICT JUDGE

RANDELL HAAS,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Robert Miracle, ("Petitioner"), confined at the Cotton Correctional Facility in Jackson, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, petitioner challenges his convictions for four counts of first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(a); and one count of second-degree criminal sexual conduct, M.C.L.A. 750.520c(1)(a).  For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I.  Background

Petitioner was convicted following a jury trial in the Monroe County Circuit Court. Petitioner's conviction arose from allegations of sexual misconduct with a minor.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The victim testified that around July 4, 2002, defendant sexually assaulted her at least five times on three separate occasions by inserting his penis into

1

her mouth, inserting his tongue into her vagina, twice inserting his fingers into her vagina, and licking her breast with his tongue.  In addition, the victim's aunt's testified that the victim told her that defendant sexually assaulted her.

*People v. Miracle*, No. 297109, 2011 WL 2936801, at * 2 (Mich. Ct. App. July 21, 2011).

The Michigan Court of Appeals affirmed petitioner's convictions but remanded the case to the trial court for resentencing because petitioner had been improperly assessed a habitual third enhancement. *Id.,* * 1, 8.  The Michigan Supreme Court denied petitioner leave to appeal. *People v. Miracle,* 492 Mich. 864, 819 N.W. 2d 901 (2012).

On remand, petitioner was re-sentenced as a second habitual offender.

Petitioner appealed the restitution order.  Upon a confession of error by the prosecutor, the Michigan Court of Appeals remanded the matter to the trial court to vacate the order of restitution. *People v. Miracle,* No. 315185 (Mich.Ct.App. Aug. 23, 2013).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Miracle*, No. 08-37169-FH (Monroe Cty. Cir.Ct. Jan. 3, 2013).  The Michigan appellate courts denied petitioner leave to appeal. *People v. Miracle,* No. 314576 (Mich.Ct.App. Sept. 23, 2013); *lv. den.* 495 Mich. 948, 843 N.W. 2d 541 (2014).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court abused its discretion and denied the petitioner due process when it permitted the complainant to read aloud for the jury two poems she wrote about the experience of being raped.  The poems were erroneously admitted as evidence of prior consistent statements.

II. A police officer's testimony that petitioner admitted committing a sexual act against another minor in 1994 was not relevant to the offense under 404(b) or MCL 768.27a.

III. MCL 768.27a operated unconstitutionally as an *ex post facto* law when the statute took effect after the charged offense and served to alter a legal rule of evidence and required different testimony than was required at the time of commission of the charged offense.

2

IV. Petitioner's due process rights were violated by the prosecution's unwarranted 20-month delay between the complaint and his arrest. U.S. Const. Amens, 5 & 14.

V. Petitioner was denied his Sixth Amendment right to the effective assistance of counsel.

a. Trial counsel failed to investigate and prepare an alibi defense.

b. Trial counsel failed to have endorsed two res gestae witnesses and produce them for trial.

c. Trial counsel was ineffective for failing to seek a due diligence hearing on missing witnesses and curative instruction.

d. Counsel was ineffective for failing to object to prosecutorial misconduct.

e. Counsel was ineffective for failing to object to incorrect habitual offender status and subsequent sentence enhancement, and failed to object to erroneous restitution order.

VI. a. Petitioner was denied his constitutional right to confront witnesses against him where former Detective Michele Marshall testified as to what a previous complainant allegedly told her during the course of an investigation.

b. Petitioner was denied the effective assistance of counsel where counsel failed to object to Confrontation Clause violation.

c. Petitioner is entitled to habeas relief in this claim without having to demonstrate cause and prejudice for not raising it on direct appeal, but if the Court concludes that showing is necessary, petitioner was denied his due process right to the effective assistance of counsel.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

3

law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state

4

court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.  A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III.   Discussion

### A.  Claims # 1, # 2, and # 3.  The evidentiary law issues.

The Court discusses petitioner's first three claims together for judicial economy because they involve evidentiary issues.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Stephenson v. Renico,* 280 F. Supp. 2d 661, 666 (E.D. Mich. 2003).

In his first claim, petitioner alleges that the trial court erred in admitting two poems written by the victim as prior consistent statements because the poems did not meet the requirements to come within this exception to the hearsay rules.

The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer,* 82 Fed. Appx. 147, 150 (6th Cir. 2003); *See also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v.*

5

*Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002)(petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable in federal habeas review, where the claim alleged a violation of state law, not a violation of federal constitutional rights). The admission of this evidence in violation of Michigan's rules of evidence would not entitle petitioner to relief.    T h e admission of a prior consistent statement when the declarant is available for cross-examination at trial, as was the case here, is not a question that rises to the level of a constitutional violation for purposes of habeas corpus relief. *See United States ex. rel. Gonzalez v. DeTella,* 918 F. Supp. 1214, 1222 (N.D. Ill. 1996)(internal citations omitted). Indeed, there is no violation of the Sixth Amendment's Confrontation Clause when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens,* 484 U.S. 554, 560 (1988); *See also Crawford v. Washington,* 541 U.S. 36, 59, n. 9 (2004); *U.S. v. Mayberry*, 540 F. 3d 506, 516 (6th Cir. 2008). As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation clause problem." *California v. Green,* 390 U.S. 149, 162 (1970). In this situation, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Owens,* 484 U.S. at 560 (internal citations omitted). When a declarant's out of court statement is admitted at a criminal defendant's trial, "the question is whether defendant has the *opportunity* to cross-examine the declarant at trial." *Strayhorn v. Booker,* 718 F. Supp. 2d 846, 867 (E.D. Mich. 2010)(emphasis original). Because the victim testified at petitioner's trial and was subject to cross-examination, the

6

admission of her poems did not violate petitioner's Sixth Amendment right to confrontation. *See Shannon v. Berghuis,* 617 F. Supp. 2d 596, 604 (W.D. Mich. 2008).

In his second claim, petitioner claims that the trial court erred in admitting into evidence his 1994 conviction for second-degree criminal sexual conduct involving another minor victim. Petitioner contends that the admission of his prior sexual assault pursuant to M.C.L.A. 768.27a was irrelevant, prejudicial, and was admitted solely to establish petitioner's propensity to commit the charged offense, in violation of M.R.E. 404(b).

The evidence of petitioner's prior criminal sexual conduct conviction was admitted pursuant to M.C.L.A. 768.27a, which provides in relevant part that if "the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Under M.C.L.A. 768.27a(2)(a), "listed offense" is defined as any offense that comes within the purview of the offenses covered under Section 2 of the Sex Offenders Registration Act. See M.C.L.A. 28.722. [1] M.C.L.A. 768.27a is similar to F.R.E. 414(a), which indicates that "[I]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant."

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich.

---

[1] Petitioner does not claim that the prior criminal sexual conduct conviction that was admitted against him at his trial was not a "listed offense" within the meaning of M.C.L.A. 768.27a.

2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *See also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

Petitioner's claim that the state court violated M.R.E. 404(b) or any other provision of state law by admitting evidence of his prior sexual assault conviction is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003). Given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by the admission of evidence to establish the petitioner's propensity to commit criminal acts, the Michigan Court of Appeals' rejection of petitoner's second claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008). Finally, in light of the fact that evidence regarding petitioner's prior sexual assault would have been admissible against him in a federal trial under F.R.E. 414, this Court certainly cannot find that the admission of this evidence at petitioner's state court trial "was patently unfair, contradicted

8

governing Supreme Court precedent, or resulted in an incorrect and unreasonable application of federal law." *Love v. Carter*, 49 Fed. Appx. 6, 12 (6th Cir. 2002). Petitioner is not entitled to relief on his second claim.

In his third claim, petitioner alleges that the application of M.C.L.A. 768.27a to his case violates the *Ex Post Facto* Clause of the United States Constution, since petitioner's prior criminal sexual conduct conviction occurred before the statute took effect on January 1, 2006. Petitioner argues that M.C.L.A. 768.27a violates the *Ex Post Facto* Clause because it permits the prosecution to use a defendant's prior sexual misconduct to establish his propensity to commit the charged offense, something that had previously been prohibited under M.R.E. 404(b).

Article 1, § 10 of the United States Constitution prohibits states from passing *ex post facto* laws. The *Ex Post Facto* Clause prohibits any law which: 1) makes an act which had previously been innocent a criminal act; 2) aggravates a crime and makes it more serious than it was when it was committed; 3) changes the punishment and inflicts a greater punishment for the crime than when it was committed; or 4) alters the legal rules of evidence and requires less or different testimony or a lesser quantum of evidence to convict the defendant than was required at the time that the crime was committed. *See Carmell v. Texas*, 529 U.S. 513, 522 (2000)(citing to *Calder v. Bull,* 3 U.S. 386, 390 (1798)). In *Carmell*, the Supreme Court addressed the retrospective application of a Texas law which provided that certain sex offenses could be established solely on the victim's testimony, whereas previously the law required additional corroborating evidence. *Id.* at 516. The Supreme Court held that the retrospective application of this statute violated the *ex post facto* prohibition because this legislation "changed the quantum of

9

evidence necessary to sustain a conviction." *Id.* at 530-33.

The Supreme Court in *Carmell,* however, offered the following qualification:

> We do not mean to say that every rule that has an effect on whether a defendant can be convicted implicates the *Ex Post Facto* Clause. Ordinary rules of evidence, for example, do not violate the Clause .... Rules of that nature are ordinarily evenhanded, in the sense that they may benefit either the State or the defendant in any given case. More crucially, such rules, by simply permitting evidence to be admitted at trial, do not at all subvert the presumption of innocence, because they do not concern whether the admissible evidence is sufficient to overcome the presumption.

*Id.* at 533, n. 23.

In the present case, the application of M.C.L.A. 768.27a to petitioner's case does not violate the *Ex Post Facto* Clause because even if the law allows for the admission of evidence to establish petitioner's propensity to commit the charged act, something which had previously been prohibited under Michigan law, it does not "lower the quantum of proof or value of the evidence needed to convict a defendant." *People v. Pattison,* 276 Mich.App. 613, 619; 741 N.W.2d 558 (2007).

Other cases have also rejected similar *ex post facto* challenges to the retrospective application of new laws that permit the introduction of evidence of prior sexual misconduct to establish the offender's propensity to commit the charged offense, on the ground that such laws do not lower the quantum of evidence or burden of proof required to sustain a sexual misconduct conviction. *See Schroeder v. Tilton,* 493 F.3d 1083, 1088 (9th Cir. 2007)(admission of evidence of habeas petitioner's prior sex crimes in his sexual assault trial, pursuant to a California rule excepting such evidence from the general ban on propensity evidence that had been passed into law after the crimes were committed but before trial, did not violate the *Ex Post Facto* Clause, because the law did not affect the

10

quantum of evidence sufficient to convict, in that allowing the jury to view such evidence did not mean that they could rely solely on the uncharged acts to convict, as nothing in rule provided that such evidence would suffice to prove all of the elements of a violation of the charged offense); *Ledesma v. Government of Virgin Islands*,159 F. Supp. 2d 863, 869-70 (D. Virgin Islands 2001)(retrospective application of F.R.E. 414 to permit the introduction of the defendant's prior acts of child molestation did not violate the *Ex Post Facto* Clause, even if they put the defendant's character into evidence); *James v. State*, 204 P.3d 793, 795 (Okla.Crim.App. 2009)(admission of evidence concerning child victim's claim of sexual abuse pursuant to statutes permitting evidence of other, specified offenses of a sexual nature did not violate defendant's constitutional protection from *ex post facto* laws; enactment of statutes did not affect the quantum of evidence necessary to support defendant's conviction); *State v. Greene*, 951 So.2d 1226, 1231-32 (La.App. 5 Cir. 2007)(admission at aggravated-rape trial of evidence of defendant's sexual conduct with his daughters by retroactive application of statute governing evidence of similar crimes, wrongs, or acts in sex-offense cases did not violate constitutional prohibition of *ex post facto* application of criminal law by the state; statute did not alter quantum of evidence required for a conviction but, rather, simply expanded type of evidence that may be introduced in prosecution of certain sex offenses); *State v. Douglas*, 917 S.W.2d 628, 631 (Mo.App. W.D. 1996)(statute providing that in certain prosecutions involving victim under 14 years of age, evidence that defendant has committed other charged or uncharged crimes involving victims under 14 years of age is admissible, is not an *ex post facto* law; it involves change in rule of evidence but does not change elements of offense or punishment for offense).

11

In light of the number of courts who have rejected similar *ex post facto* challenges to the retrospective application of laws that permit the introduction of prior sexual misconduct to establish a defendant's propensity to commit the charged sexual misconduct, petitioner is not entitled to habeas relief on his third claim, because he has failed to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

### B.  Claim # 4.  The pre-arrest delay claim.

Petitioner next claims that his due process rights were violated because of the twenty month delay between the time that the police completed their investigation in roughly March of 2007 and his actual arrest on these charges in August of 2008.

The Michigan Court of Appeals rejected petitioner's claim:

> Although defendant presents the names of eight witnesses and summarizes what he believes the witnesses' testimony would have been, defendant has failed to prove that the prearrest delay prejudiced him.  Defendant's assertions are mere generalized allegations that are not supported by the lower court record.  Furthermore, defendant failed to offer any evidence, such as the witnesses' affidavits, to support his contentions.  Moreover, defendant presented no evidence that the prearrest delay was orchestrated by the prosecution in an attempt to gain a tactical advantage.  Rather, the prosecution had good cause for the prearrest delay because it was still investigating the case.  Defendant has failed to meet his burden and has not established actual and substantial prejudice.  Defendant was not denied due process because of prearrest delay.

*People v. Miracle*, 2011 WL 2936801, at * 5 (internal citations omitted).

This Court initially notes that petitioner has neither alleged nor established a violation of his Sixth Amendment right to a speedy trial, because his allegations only involve a delay in being arrested and not a claim that there was a delay in bringing him to

trial. The Supreme Court has noted that it is "[e]ither a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion,* 404 U.S. 307, 320 (1971). Therefore, although the invocation of the Speedy Trial Clause of the Sixth Amendment need not await indictment, information or other formal charge, the provision of the Speedy Trial Clause does not apply to the period prior to arrest. *Id.*

The Due Process Clause, however, provides a limited role in protecting criminal defendants against "oppressive" pre-arrest or pre-indictment delay. *United States v. Lovasco,* 431 U.S. 783, 789 (1977). Proof of prejudice is generally a necessary but not sufficient element of a due process claim involving pre-indictment delay, and the due process inquiry must consider the reasons for the delay as well as prejudice to the accused. *Id.* at 790.

The Sixth Circuit has consistently read *Lovasco* to hold that dismissal for pre-indictment delay is warranted only when the defendant shows: (1) substantial prejudice to his right to a fair trial; and (2) that the delay was an intentional device by the government to gain a tactical advantage. *United States v. Brown*, 959 F. 2d 63, 66 (6th Cir. 1992). The Sixth Circuit has repeatedly held that where the pre-indictment delay is caused merely by negligence on the part of prosecutors or police, no due process violation exists. *United States v. Rogers.* 118 F. 3d 466, 476 (6th Cir. 1997)(rejecting the argument that "reckless or negligent disregard of a potentially prejudicial circumstance violates the Fifth Amendment guarantee of due process"); *United States v. Banks*, 27 Fed. Appx. 354, 357 (6th Cir. 2001)("Our Circuit has recognized that where delay is due to simple

13

negligence and not a concerted effort by the government to gain an advantage, no due process violation exists."). Finally, where a habeas petitioner fails to show that the prosecutor delayed the prosecution for illegitimate reasons, it is unnecessary for a court to determine whether the petitioner satisfies the "substantial prejudice" requirement. *Wolfe v. Bock,* 253 Fed. Appx. 526, 532 (6th Cir. 2007)(no due process deprivation of right to fair trial when petitioner failed to establish that 15-year delay between murder and his arrest was for illegitimate reasons). A defendant who seeks dismissal of criminal charges based on pre-charging or pre-indictment delay has the burden of demonstrating that the delay between the crime and the indictment was an intentional device on the part of the prosecution to gain a decided tactical advantage in its case. *United States v. Schaffer,* 586 F. 3d 414, 425-26 (6th Cir. 2009).

Petitioner is not entitled to habeas relief on his pre-arrest delay claim, because he has failed ro establish that the prosecutor intentionally delayed filing charges here to gain a tactical advantage, rather than for valid reasons. Although petitioner argues that an improper intent can be inferred because the police allegedly had all of the evidence they needed to prosecute him within the first few weeks of the investigation, this would at best support an inference of negligence or recklessness, which is insufficient to show improper intent on the part of law enforcement. *See Parker v. Burt*, 595 Fed. Appx. 595, 601 (6th Cir. 2015), *cert. denied*, 135 S. Ct. 2384 (2015). The conclusion of the Michigan Court of Appeals that petitioner failed to show that the state's delay in charging him was an intentional device to gain a tactical advantage was thus reasonable. *Id.* Because petitioner has failed to show that the prosecutor delayed the prosecution for invalid reasons, it is would be unnecessary for this Court to determine whether petitioner can establish that he

14

was substantially prejudiced by the delay. *Wolfe,* 253 Fed. Appx. at 532.

Nonetheless, petitioner is unable to establish that he was prejudiced by the delay in prosecuting his case. The Sixth Circuit has observed that: "[T]he standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative." *Rogers,* 118 F. 3d at 477, n. 10.

Petitioner claims that because of the passage of time, several witnesses could not be located, and/or the memories of these witnesses have diminished with time. However, "a vague assertion that memories have diminished, witnesses have been lost, and documents have been misplaced does not establish actual prejudice from a pre-charge delay." *Randle v. Jackson,* 544 F. Supp. 2d 619, 631 (E.D. Mich. 2008)(citing *United States v. Beszborn,* 21 F. 3d 62, 67 (5th Cir. 1994); *United States v. Mask,* 154 F. Supp. 2d 1344, 1348 (W.D. Tenn. 2001)). Petitioner failed to present any affidavits from any of these witnesses in support of his claim.

Petitioner further claims that the delay in arrest caused him to lose thirty four months sentencing credit. Any deprivation of sentencing credits would be insufficient to establish prejudice for purposes of establishing a due process violation. *See Burns v. Lafler*, 328 F. Supp. 2d 711, 720 (E.D. Mich. 2004). "[T]o bring a cognizable due process claim in this area, the pre-indictment delay must prejudice one's right to a fair *trial*—by, for example, causing evidence to become stale or disappear." *Id.* (quoting *United States v. Wade,* 93 Fed.Appx. 874, 876 (6th Cir.2004)(emphasis original)). Petitioner is not entitled to relief on his fourth claim.

## C. Claim # 5.  Ineffective assistance of trial counsel claims.

15

Petitioner next claims that he was denied the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

 "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles*

*v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner first claims that his trial counsel was unprepared for trial and only met with him some thirteen days prior to trial.

As an initial matter, petitioner fails to note that his counsel at trial was his third court-appointed attorney. Petitioner's first trial attorney was permitted to withdraw on December 5, 2008 after a breakdown in the attorney-client relationship and new counsel was appointed. (Tr. 12/5/08). On May 7, 2009, petitioner's second attorney was also permitted to withdraw because of a breakdown in the attorney-client relationship (Tr. 5/7/09) and petitioner's third attorney was appointed on May 12, 2009. Petitioner's first two attorneys presumably consulted with petitioner during the pre-trial stages.

More importantly, petitioner's third attorney's alleged failure to consult more

17

frequently with petitioner prior to trial does not entitle petitioner to relief, because petitioner failed to show how additional visits with his trial attorney would have altered the outcome of the trial. *See Bowling v. Parker,* 344 F. 3d 487, 506 (6th Cir. 2003).

Petitioner initially claims that trial counsel was ineffective for failing to present several alibi witnesses to show that he was at the hospital for the birth of his child at the time of the crimes.

Petitioner failed to present any affidavits from these proposed alibi witnesses to support his ineffective assistance of trial counsel claim on his direct appeal with the Michigan Court of Appeals.  Petitioner also failed to attach any affidavits from these witnesses to his petition for writ of habeas corpus.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  By failing to present any evidence to the state courts in support of his ineffective assistance of trial counsel claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii).  Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether these witnesses would have been able to testify and what the content of their testimony would have been.  In the absence of such proof, petitioner is unable to establish that he was prejudiced by trial counsel's failure to call these alibi witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551*,* 557 (6th Cir. 2007).

Moreover, as the Michigan Court of Appeals noted, *People v. Miracle*, 2011 WL

18

2936801, at *8, petitioner's trial counsel did call two witnesses, Brandon Vandevelde and Judith Miracle, who testified that petitioner was at the hospital at the time of the alleged offenses. (Tr. 9/14/09, pp. 157-89). Because any testimony from these additional witnesses would have been cumulative of the alibi testimony presented by Mr. Vandevelde and Ms. Miracle, the Michigan Court of Appeals' rejection of petitioner's ineffective assistance of counsel claim was not an unreasonable application of *Strickland*. *See Robins v. Fortner,* 698 F. 3d 317, 330 (6th Cir. 2012).

Finally, this Court notes that Detective Michael Boczar testified that he spoke with petitioner and that petitioner admitted that the victim had been at his apartment on July 4, 2002 and that he had come home from the hospital to his apartment to shower and change clothes. Petitioner initially denied being alone with the victim at his apartment but then admitted he may have been alone with her albeit only for casual contact. (Tr. 9/14/09, pp. 194-95). Because petitioner's own statement to the police refuted an alibi, petitioner was not prejudiced by counsel's failure to more thoroughly pursue such a defense. *See e.g. Taylor v. Abramajtys*, 20 Fed. Appx. 362, 364 (6th Cir. 2001)(to render effective assistance of counsel, counsel was not required to give notice of alibi defense when defendant's own statement to police refuted any alibi).

Petitioner next claims that trial counsel was ineffective for failing to have the prosecutor produce the victim's brother and cousin who were present at his apartment the night of the assaults. Petitioner claims that these two individuals were *res gestae* witnesses who could have provided useful information. Petitioner argues that trial counsel should have requested the prosecutor to produce these witnesses or to request a due diligence hearing concerning the prosecutor's failure to produce these witnesses.

19

Petitioner failed to show that these witnesses would have offered favorable testimony to the defense, therefore, counsel was not ineffective for failing to seek the production of these witnesses or for failing to demand a due diligence hearing. *See Greene v. Lafler*, 447 F. Supp. 2d 780, 793 (E.D. Mich. 2006).

As a related claim, petitioner contends that trial counsel was ineffective for failing to request an adverse inference jury instruction based upon the prosecutor's failure to produce these and other *res gestae* witnesses at trial. Petitioner argues that counsel should have requested CJI 2d 5.12, which states that a jury may infer that a missing prosecution witness' testimony would have been unfavorable to the prosecution's case.

In the present case, petitioner has presented no evidence that the prosecutor or the police acted in bad faith in failing to produce these witnesses for trial or that they did not exercise due diligence in attempting to locate them. Because petitioner has failed to establish that the police acted in bad faith in failing to locate these witnesses or that they did not act in due diligence in attempting to find them, petitioner would not be entitled under Michigan law to an adverse inference instruction and counsel was therefore not ineffective in failing to request such an instruction from the court. *See Bailey v. Smith,* 492 Fed. Appx. 619, 627-28 (6th Cir. 2012).

Petitioner next contends that trial counsel was ineffective for failing to object to prosecutorial misconduct when the prosecutor elicited testimony from Detective Michele Marshall that the victim from petitioner's 1994 criminal sexual conduct conviction had been diagnosed with Chlamydia during a medical examination. Petitioner claims that this testimony was irrelevant and offered to elicit a negative response from the jury by inferring that petitioner had infected the victim in the 1994 case with this sexually transmitted

20

disease.  Petitioner also claims that this evidence was misleading because petitioner had tested negative at the time for Chlamydia and for the use of any antibiotics which would have cured him of the disease.

When defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he or she did so for tactical reasons, rather than through sheer neglect, and this presumption has particular force where an ineffective assistance of counsel claim is asserted by a federal habeas petitioner based solely on the trial record, where a reviewing court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." See *Yarborough v. Gentry,* 540 U.S. 1, 5-6 (2003)(quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)).  In the present case, counsel may very well have made a strategic decision not to object to this testimony, so as to avoid bringing undue attention to the evidence. See *Cobb v. Perini,* 832 F.2d 342, 347-48 (6th Cir. 1987).  "[N]ot drawing attention to [a] statement may be perfectly sound from a tactical standpoint[,]."*United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006).  Stated differently, petitioner is unable to show that counsel's failure to object to this evidence-thus drawing attention to it—was deficient, so as to support an ineffective assistance of counsel claim. See *Smith v. Bradshaw*, 591 F. 3d 517, 522 (6th Cir. 2010).

Petitioner finally contends that trial counsel was ineffective for failing to object to petitioner being charged and sentenced as a third felony habitual offender and for being ordered to pay restitution as part of his sentence.  The Michigan Court of Appeals vacated petitioner's third habitual offender enhancement and ordered him re-sentenced as a second habitual offender.  In a subsequent order, the Michigan Court of Appeals vacated

21

petitioner's restitution order.  In light of the fact that the Michigan Court of Appeals ordered that petitioner be resentenced as a second habitual offender and that his order of restitution be set aside, this portion of his ineffective assistance of counsel claim is now moot. *See U.S. v. Jones,* 489 F. 3d 243, 255 (6th Cir. 2007).  Petitioner is not entitled to relief on his fifth claim.

### D.  Claim # 6. The Confrontation Clause/Ineffective assistance of counsel claim.

Petitioner lastly claims that his Sixth Amendment right to confrontation was violated when Detective Marshall testified that the victim in petitioner's 1994 conviction told her that petitioner forced her to perform fellatio on him.  Petitioner further claims that trial counsel was ineffective for failing to object to this testimony and that appellate counsel was ineffective for failing to raise this claim on his appeal of right.

Petitioner raised this in his post-conviction motion for relief from judgment.  The judge rejected the claim, finding it to be harmless:

> The defendant claims that he was prejudiced by having his sixth amendment right to confront witnesses infringed by a former detective's testimony as to statements made by the victim of a prior sexual assault.  The majority of the detective's testimony dealt with the defendant's confession and conviction for Criminal Sexual Conduct – Second Degree involving a 3 year old.  The detective's one sentence of testimony about the victim's statement was in response to a preliminary question.  The defendant made admissions as to the sexual assault, he was convicted of Criminal Sexual Conduct–2nd Degree, and this arguably hearsay testimony of the prior victim was cumulative.  As the trial Court and the Court of Appeals both found, this testimony was admissible under MCL 768.27a and MRE 404(b).  Given the strength of the case against the defendant, the defendant would not have had a reasonably likely chance of acquittal if this one statement by the victim had not been admitted.

*People v. Miracle*, No. 08-37169-FH, * 3-4 (Monroe Cty. Cir.Ct. Jan. 3, 2013).

"Unless its jurisdiction is at stake, a federal district court on federal habeas review

'may take up issues in whatever sequence seems best, given the nature of the parties' arguments and the interest in avoiding unnecessary constitutional decisions.'" *Dittrich v. Woods*, 602 F. Supp. 2d 802, 809 (E.D. Mich. 2009); *aff'd in part and rev'd in part on other grds,* 419 Fed.Appx. 573 (6th Cir. 2011)(quoting *Aleman v. Sternes,* 320 F. 3d 687, 691 (7th Cir. 2003)).  When a federal court is confronted with several possible grounds for adjudicating a case, any of which would lead to the same disposition of the case, "a federal court should choose the narrowest ground in order to avoid unnecessary adjudication of constitutional issues." *Id.* (citing *U.S. v. Allen*, 406 F. 3d 940, 946 (8th Cir. 2005)).  Therefore, a federal district court on habeas review of a state court conviction can proceed directly to a harmless error analysis of a habeas petitioner's claims without first reviewing the merits of the claim or claims, "when it is in the interest of judicial economy and brevity to do so." *Id.* (citing *Porter v. Horn*, 276 F. Supp. 2d 278, 344 (E.D. Pa. 2003).

Confrontation Clause violations are subject to harmless error review. *See Bulls v. Jones,* 274 F. 3d 329, 334 (6th Cir. 2001).  In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.  In determining whether a Confrontation Clause violation is harmless under *Brecht*, a court should consider the following factors: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall

23

strength of the prosecution's case." *See Jensen v. Romanowski,* 590 F. 3d 373, 379 (6th Cir. 2009)(citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

Petitioner failed to show that the admission of the hearsay statement from the victim in petitioner's 1994 criminal sexual conduct case had a substantial and injurious influence on the jury verdict. The victim from the 2002 sexual assaults testified that petitioner sexually assaulted her several times. This victim's testimony was corroborated by her aunt. Detective Marshall testified that petitioner confessed to sexually abusing the victim in the 1994 case and pleading guilty to second-degree criminal sexual conduct. The hearsay statement from the victim in the 1994 case was cumulative of additional evidence offered in this case concerning petitioner's 1994 criminal sexual conduct conviction. The testimony concerning the 2002 sexual assaults was convincing. The admission of the 1994 victim's hearsay statement was harmless error. "[V]iewed through the deferential lens of AEDPA, the state court's harmlessness ruling must stand" because based on the record in this case, the trial court reasonably rejected any potential error in the admission of the hearsay statement as harmless error. *See Kennedy v. Warren,* 428 Fed. Appx. 517, 522, 523 (6th Cir. 2011).

The Court rejects petitioner's related ineffective assistance of counsel claim. "The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). Because the admission of the out-of-court statement from the victim in the 1994 case was harmless error, petitioner cannot satisfy *Strickland's* prejudice requirement. *See e.g. Bell v. Hurley,* 97 Fed. Appx. 11, 17 (6th Cir. 2004). Petitioner is not entitled to relief on his related ineffective assistance of counsel claim.

24

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus with prejudice.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d at 875.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).  The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

s/ Nancy G. Edmunds
**HON. NANCY G. EDMUNDS**
UNITED STATES DISTRICT COURT

Dated: April 20, 2016